UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN SHAW,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STUART SHERMAN, Warden,<br><br>　　　　Defendant. | Case No.: 1:21-cv-01318-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS FOR A FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Irvin Shaw is proceeding pro se and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983.

The Court issued its First Screening Order on November 23, 2022. (Doc. 10.) It held Plaintiff failed to state an Eighth Amendment conditions of confinement claim. (*Id*. at 6-9.) Plaintiff was granted leave to file an amended complaint curing the deficiencies identified in the screening order. (*Id*. at 10-11.)

On January 27, 2023, Plaintiff filed his first amended complaint. (Doc. 14.)

**I.　　SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II.     PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.*

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

1    To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### III.    DISCUSSION

Plaintiff's first amended complaint names Stuart Sherman, warden at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California, as defendant in this action. (Doc. 14 at 3.) Plaintiff seeks a declaratory judgment, compensatory and punitive damages, costs of suit and attorney fees, and "further relief as deemed proper." (*Id*. at 7.)

Plaintiff asserts that in early 2020, a memorandum was issued by the California Department of Corrections and Rehabilitation ("CDCR") to all wardens, including Defendant Sherman, that required certain precautions pertaining to the COVID-19 virus, including isolation or quarantine, vaccination, ventilation, mandatory face coverings, hygiene protocols and disinfection. (Doc. 14 at 3-4.)

Plaintiff contends that in November 2020, Defendant Sherman violated "state regulatory law" by reclassifying the facility where Plaintiff was housed "to allow for the transfer there of COVID-infested inmates." (Doc. 14 at 4.) He maintains Sherman "authorized newly-infected inmates to be moved to uninfected housing units, failed to quarantine or otherwise isolate" symptomatic individuals and "allowed infected inmates to pass out food to uninfected inmates." (*Id*.) Plaintiff further asserts Sherman authorized staff assignments involving "different units on different shifts or days throughout the week, whether or not such assignments were necessary or avoidable," in violation of "DPH and CDC guidelines," allowing "infected staff, contractors, and volunteers" to enter Plaintiff's housing facility needlessly exposing him to "COVID-infected

4

persons." (*Id*. at 4-5.) As a result, Plaintiff's risk of exposure was significantly increased. (*Id*. at 5.) Plaintiff contends Sherman failed to enforce "the standing order that required C.O.s, staff, and inmates to wear face masks at all times," and that Sherman "knew, or should have known, that this failure would unreasonably increase" Plaintiff's risk of contacting COVID. (*Id*.) Further, Plaintiff asserts Sherman "instituted an underground policy that failure to ensure social distancing was complied with" in the facility, resulting in his close contact with infected inmates. (*Id*.) Plaintiff next contends Sherman "instituted an underground policy that fails to assign unvaccinated C.O.s and staff to areas outside of direct contact with uninfected inmates" and failed to comply with CDCR policy concerning proper ventilation and disinfection. (*Id*.)

Plaintiff states he submitted a sick call slip on December 10, 2020, concerning chest pain and a history of heart problems, "the air not working in cell," and difficulty breathing. (Doc. 14 at 5.) The following day, Plaintiff submitted a sick call slip "about his fear of COVID due to being classified a High Risk medical inmate, having no spleen and COVID mitigation measures not being adhered to." (*Id*.) Plaintiff alleges the response to his grievance "falsely stated" measures were being taken to address health screening, deep cleaning, personal protective equipment, the suspension of inmate transfers and movement, quarantine and social distancing protocols, cancellation of visitation, and masking. (*Id*. at 5-6.)

Plaintiff contends he "was ill for months after he was infected with COVID," suffering from a loss of sleep, racing thoughts and anxiety, head and body aches, joint pain, confusion, "and other emotion and physical pain and suffering." (Doc. 14 at 6.) He states that as a result of Sherman's acts and omissions, he now suffers permanent loss of "most of his sense of smell" and has developed intermittent "brain fog." (*Id*.)

Plaintiff asserts an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Sherman. (Doc. 14 at 6.) He contends Sherman consciously disregarded an excessive risk of injury or death by unlawfully failing to comply with CDCR regulations designed to prevent or mitigate the risk of COVID infection and implemented an unlawful policy "so deficient that the policy itself was a repudiation" of Plaintiff's constitutional right to be free from cruel and unusual punishment. (*Id*.) Plaintiff alleges Sherman's acts or omissions were

grossly incompetent, inadequate, "or excessive as to shock the conscience or be intolerable to accepted standards of penological practice." (*Id.*) Further, Plaintiff contends the acts or omissions were "made in the absence of professional judgment," and "evinced a deliberate indifference to serious medical need" of Plaintiff and others similarly situated. (*Id.*) As a result, Plaintiff suffered severe emotional and physical pain and suffering. (*Id.*)

### A. Plaintiff's Claim

Plaintiff's first amended complaint expressly asserts an Eighth Amendment "deliberate indifference to a serious medical need" claim against Defendant Sherman. (Doc. 14 at 6.) It does not expressly assert an Eighth Amendment conditions of confinement claim.[1] Out of an abundance of caution, the Court will consider both violations based upon the assertions in the amended complaint.

*Deliberate Indifferent to Serious Medical Needs*

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

---

[1] Plaintiff's original complaint asserted an Eighth Amendment conditions of confinement claim. (*See* Docs. 1 & 10.) The Court previously found Plaintiff did not state a cognizable conditions of confinement claim and permitted Plaintiff leave to file an amended complaint to cure the deficiencies identified in the First Screening Order. (Doc. 10 at 5-11.)

6

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

### *Conditions of Confinement*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer*, 511 U.S. 825; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing

effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id.* Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.* Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, citing to *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

Subjectively, if an objective deprivation is shown, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. Again, "[d]eliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

### B. Analysis

Plaintiff seeks to hold Defendant Sherman liable for an Eighth Amendment violation. As SATF's warden, liability may not be imposed on Defendant Sherman unless he "participated in or

directed the violations, or knew of the violations and failed to prevent them. *Taylor*, 880 F.2d at 1045. The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms.'" *Corrales*, 567 F.3d at 570. Supervisor liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446 (citations & quotation marks omitted), abrogated on other grounds in *Farmer*, 511 U.S. 825.

Here, even if Plaintiff's claim is construed to assert Sherman acted with deliberate indifference to Plaintiff's serious medical needs, he has alleged no facts indicating Defendant Sherman was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed or that Sherman drew such an inference. *Toguchi*, 391 F.3d at 1057. Although Plaintiff alleges he submitted sick call slips (Doc. 14 at 5), there are no facts to indicate Defendant Sherman reviewed Plaintiff's sick call slips or was otherwise aware of Plaintiff's grievance.

Plaintiff asserts Defendant Sherman had "underground" policies concerning social distancing and unvaccinated staff assignment. (Doc. 14 at 5.) To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy*, 594 F.3d at 713. But an "underground" policy is not an official policy. Hence, liability does not attach, even assuming Plaintiff's allegations are true.

To the extent Plaintiff seeks to hold Sherman liable for implementing "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation," he has failed to do so. *Redman*, 942 F.2d at 1446. First, Plaintiff's assertion that Sherman "implemented an unlawful policy 'so deficient that the policy itself was a repudiation' of Plaintiff's constitutional right to be free from cruel and unusual punishment" (see Doc. 14 at 6) is vague and conclusory, is not specifically alleged and amounts to a legal conclusion. *Neitze*, 490 U.S. at 330 n.9; *Fayle*, 607 F.2d at 862; *Ivey*, 673 F.2d at 268. Second,

1  Plaintiff fails to allege the "unlawful policy" was the moving force behind of the constitutional
2  violation asserted. *Redman*, 942 F.2d at 1446.

3  Plaintiff generally alleges that Defendant Sherman "knew or should have known" that a
4  failure to enforce "C.O.s, staff, and inmates to wear face masks at all times" unreasonably
5  increased the risk Plaintiff and others would contract COVID. (Doc. 14 at 5.) But Plaintiff fails to
6  allege any facts that Sherman observed staff and inmates not wearing masks. Plaintiff does not
7  allege how Sherman would be personally aware of the purportedly unconstitutional conduct of
8  individual staff members. *Iqbal*, 556 U.S. at 678; *Sullivan v. Biter*, No. 1:15-cv-00243-DAD-
9  SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various
10 prison officials knew or should have known about constitutional violations occurring against
11 plaintiff simply because of their general supervisory role are insufficient to state a claim under 42
12 U.S.C. § 1983").

13 It is clear that COVID-19 poses a substantial risk of serious harm. *See Plata v. Newsom*,
14 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a
15 substantial risk of serious harm" to prisoners); *see also Williams v. Dirkse*, No. 1:21-cv-00047-
16 BAM (PC), 2021 WL 2227636 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19
17 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that
18 'conditions put the plaintiff at substantial risk of suffering serious harm'"); accord *Sanford v.
19 Eaton*, No. 1:20-CV-00792-BAM (PC), 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021);
20 *Benitez v. Sierra Conservation Center,* No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5
21 (E.D. Cal. Sept. 8, 2021) (The transmissibility of the COVID-19 virus in conjunction with
22 Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are
23 sufficient to satisfy the objective prong). However, to state a cognizable Eighth Amendment
24 claim against the warden, Plaintiff must provide more than generalized allegations that the
25 warden has not done enough regarding masking or prison movement or housing assignment to
26 control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D.
27 Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3
28 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control

the spread of COVID-19 in the prison); *McKissick v. Gastelo*, No. 2:21-cv-01945-VAP (MAA), 2021 WL 2895679, at *5 (C.D. Cal. Jul. 9, 2021) (plaintiff "must provide more than generalized allegations that Defendants have not done enough to enforce six-feet social and living distancing, or provided sufficient cleaning supplies, in order to control the spread of COVID-19"); *Foster v. Shirley*, 2021 WL 2457655, at *3 (E.D. Cal. June 16, 2021) (plaintiff must allege more than generalized allegations regarding what the warden did not do to control the spread of COVID-19). The question is not whether Warden Sherman could do better—the question is whether Defendant Sherman has acted with indifference to the risks posed by COVID-19. States another way, the key inquiry is not whether Defendant perfectly responded, complied with every CDC guideline, or whether the efforts ultimately averted the risk; instead, the key inquiry is whether Defendant "responded reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); accord *Benitez v. Sierra Conservation Center*, 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); *Sanford v. Eaton*, No. 1:20-CV-00792 BAM (PC), 2021 WL 3021447, at *8 (E.D. Cal. July 16, 2021) (same).

        Additionally, the Court notes an exhibit attached to Plaintiff's first amended complaint reveals that measures were implemented to protect SATF inmates from the risk of contracting COVID-19. In response to a grievance by Plaintiff, COVID protocols were specifically identified:

> Memorandum dated April 08, 2020, COVID-related Cleaning Protocols for Institutions authored by Director, C. Gipson. Memorandum dated April 16, 2020, CALPIA Cloth Face Barrier/Masks authored by Director, C. Gipson. Memorandum dated May 11, 2020, Guidance for Daily Program Regarding Social Distancing for Cell or Alternative, authored by Director, C. Gipson. Memorandum dated November 19, 2020, Authorized Facial Coverings for all employees, contractors, and visitors entering CDCR Institutions and DJJ Youth Facilities – Procedure Mask Distribution and Use. Memorandum dated November 25, 2020, COVID-19 Mandatory 14-Day Modified Program, authored by Director, C. Gipson.

(Doc. 14 at 14.) Moreover, in explaining the basis for the grievance's disapproval, it was stated:

> The California Department of Corrections and Rehabilitation (CDCR) understands the risks that the COVID-19 pandemic presents to CDCR inmates, staff, and volunteers. In light of these risks, CDCR has taken the following steps, in an effort to protect the inmate population: mandatory health screening before entering CDCR

> facilities; additional deep cleaning efforts; increased supply of disinfectants, soap, hand sanitizer, and personal protective equipment; limitations and suspensions of inmate transfers and movements; quarantine protocols; cancelling visiting at CDCR facilities until further notice; and many other steps depending on your location. It is the goal of CDCR to mitigate exposure of Coronavirus (COVID-19) to staff and inmates. The Department has set protocols that staff must adhere to while performing their duties, to include the wearing of a facial mask/barrier. CDCR and the California Substance Abuse Treatment Facility and State Prison at Corcoran, have implemented Social Distancing protocols, outline in Memorandum dated May 11, 2020, ensuring both staff and inmates adhere to the policy of remaining six feet apart and the wearing of masks. The housing unit pods currently house 6 to 8 man cohorts. When a member of the inmate population tests positive for COVID-19, they are placed into isolation and the pod mates are placed on quarantine orders per the medical department pending outcome of a COVID-19 test. Inmates who are COVID-19 symptomatic are quarantined from the population. In addition, CDCR and SATF have implemented COVID-19 related cleaning protocols to minimize the spread of COVID-19. The department provides additional cleaning supplied (Cell Block 64 and SANI-GUARD) and cleaning schedules to document the multiple cleanings that are done throughout the day. A tour of Facility G confirmed cleaning schedules are being done appropriate and both staff and inmates are adhering to current social distancing policies. Staff and inmates were wearing their masks while remaining six feet apart. Additionally, both staff and inmates are tested weekly for COVID-19 and staff is screened daily upon entrance to the institution.

(Doc. 14 at 14.) Some measures were in effect. The fact that those measures did not result in a perfect response and Plaintiff contracted COVID-19, does not make Defendant Sherman liable. *See, e.g.*, *Greer v. Caravajal*, No. 5:22-cv-00334-VBF-JDE, 2022 WL 4826513, at *9 (C.D. Cal. June 30, 2022) ("When examining whether a prison official subjectively acted with deliberate indifference to the risk of COVID-19, the key inquiry is not whether the official perfectly responded, complied with every CDC guideline, or whether his efforts ultimately averted the risk"), adopted 2022 WL 4842927 (C.D. Cal. Sept. 30, 2022); *Jones v. Sherman*, No. 1:21-1093-ADA-EPG, 2022 WL 783452, at *8 (E.D. Cal. Mar. 11, 2022) ("the failure to follow certain COVID-19 guidelines, without more, is insufficient to satisfy the subjective prong of the deliberate indifference standard"), adopted 2022 WL 4238875 (E.D. Cal. Sept. 14, 2022). To the extent Plaintiff asserts that the statements in CDCR's response to his grievance are "false," the assertion is unavailing. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (existence of inmate grievance or appeals process does not create a protected liberty interest upon which to base a

13

claim that plaintiff was denied a particular result or the process was deficient); *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized).

Plaintiff's first amended complaint fails to allege facts sufficient to show Defendant Sherman disregarded the risk faced by Plaintiff and fails to state a cognizable Eighth Amendment claim against Defendant Sherman. In sum, Plaintiff's first amended complaint fails to state a claim upon which relief can be granted. The Court finds granting Plaintiff further leave to amend would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("[a] district court may deny leave to amend when amendment would be futile"); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

### IV.     CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Clerk of the Court is **DIRECTED** to assign a district judge to this action.

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's first amended complaint be dismissed without leave to amend for failure to state a claim.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 11, 2023**           /s/ *Sheila K. Oberto*
                                                                            UNITED STATES MAGISTRATE JUDGE